# EXHIBIT 1

to the Southern Utah Wilderness Alliance's
Motion to Intervene
*BlueRibbon Coalition, Inc. v. U.S. Bureau of Land Management*, 4:25-cv-00022-DN

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH
# CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| **BLUERIBBON COALITION, INC.**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **BUREAU OF LAND MANAGEMENT**, *et al.*, <br><br> Defendants, <br><br> and <br><br> **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Proposed Defendant-Intervenor. | Case No. 4:25-cv-00022-DN <br><br> **DECLARATION OF RAY BLOXHAM** <br><br> Judge David Nuffer |

I, **RAY BLOXHAM**, declare as follows:

      1.     I have personal knowledge of each of the facts set forth below, and if called upon to do so, could and would testify regarding the following. This declaration is filed in support of the Southern Utah Wilderness Alliance's Motion to Intervene in the above-captioned matter.

      2.     I am the Field Director for the Southern Utah Wilderness Alliance (SUWA), where I have worked since 1999. The Field Director position requires me to spend considerable time on the ground visiting public lands throughout Utah. In this capacity, I have traveled extensively throughout the public lands in Utah. In particular, I have spent more time visiting and advocating for the San Rafael Swell than any other region in Utah.

      3.     I am an active member of SUWA.

4. SUWA, based in Salt Lake City, Utah, has nearly 12,000 members, many of whom reside in Utah. SUWA's mission is to preserve the outstanding wilderness and other sensitive public lands across Utah, and to manage these lands in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character through research and public education; supports both administrative and legislative initiatives to permanently protect Utah's wild places within the National Wilderness Preservation System or by other protective designations where appropriate; builds support for such initiatives on both the local and national levels; and provides leadership within the conservation movement through its advocacy for wilderness preservation.

5. SUWA members and staff have a well-demonstrated interest in the preservation and protection of Utah's remarkable BLM-managed public lands, as well as in BLM's compliance with federal environmental laws and the preservation and protection of wildlife, vegetation, and cultural resources in the region. SUWA takes an active role in providing information to the BLM regarding the agency's day-to-day management activities and participates in all levels of the BLM's decision-making process.

6. SUWA members and staff also participate in information gathering and dissemination, education and public outreach, commenting upon proposed government actions, and other activities relating to the management of and impacts on BLM lands, including lands within the San Rafael Swell Travel Management Area (TMA). For example, SUWA and its members advocated for passage of the John D. Dingell, Jr. Conservation, Management and Recreation Act, which designated certain lands within the TMA as Wilderness. SUWA members benefit from BLM's compliance with federal environmental laws and agency regulations, and

expect that BLM will comply with those laws and regulations. Likewise, SUWA members benefit from and expect BLM's compliance with settlement agreements entered into with SUWA.

7. SUWA members and staff enjoy recreating, sightseeing, birdwatching, photography, backpacking, hiking, canyoneering, climbing, packrafting, camping, cultural sightseeing and exploration, and other activities on public lands in the San Rafael Swell, which is the subject of BLM's San Rafael Swell Travel Management Plan (TMP) and is the subject of the above-captioned matter. SUWA members and staff use and enjoy the public lands encompassed in the San Rafael Swell TMP as well as the lands adjacent to the routes at issue and the lands in the greater region.

8. SUWA members' and staff's recreational, aesthetic, scientific, informational, and other interests are directly affected by BLM's decision in the above-captioned matter, and would be harmed if the Court reverses, sets aside, modifies or remands that decision. In particular, BLM decided not to designate for public motorized vehicle use 665 of miles routes within the TMA, many of which are illegally-created user trails. Many of these 665 miles are located within BLM-identified lands with wilderness characteristics and proposed for wilderness designation in America's Red Rock Wilderness Act (ARRWA), riparian areas along the Price River, San Rafael River, Muddy Creek, and many streams and washes. Additionally, many of these routes either do not exist on the ground or are disappearing; that is, they have either never been driven or were used for some moment in time but are reclaimed or are actively reclaiming.

9. Because SUWA's interests and those of its staff members are affected by BLM's travel management decisions, including for the San Rafael Swell, SUWA and I were heavily

3

involved in both defending the BLM's 2003 San Rafael Route Designation Plan from administrative and federal court challenge, as well as challenging the BLM's 2008 Price and Richfield resource management plans and travel management plans. It was that SUWA-led litigation that ultimately resulted in the San Rafael Swell TMP and decision at issue in this case.

10. In March 2021, SUWA submitted public comments to BLM as part of the scoping phase of the San Rafael Swell TMP process. In those comments, SUWA highlighted route-specific issues, proposed alternatives to consider and identified issues BLM was required to consider in travel planning. . In March 2024—after BLM released preliminary alternative route networks—SUWA submitted additional public comments to BLM that included route-specific comments, geographic information system (GIS) data, and photo documentation of route conditions. In July 2024, SUWA provided comments on BLM's draft environmental assessment. Those comments again included route-specific information, maps, and photo documentation. They also highlighted BLM's obligation to comply with federal laws and regulations including, but not limited to, National Environmental Policy Act, the National Historic Preservation Act, and their implementing regulations, as well as the "minimization criteria" found at 43 C.F.R. § 8342.1.

11. The lands encompassed by the San Rafael Swell TMP are part of the San Rafael Swell TMA which is located east of Fishlake and Manti-La Sal National Forests and west of the San Rafael Desert and the Green River. The San Rafael Swell TMA includes several designated Wilderness areas, including the Big Wild Horse Mesa, Cold Wash, Devils Canyon, Eagle Canyon, Horse Valley, Little Ocean Draw, Little Wild Horse Canyon, Lower Last Chance, Mexican Mountain, Middle Wild Horse Mesa, Muddy Creek, Reds Canyon, San Rafael Reef,

and Sids Mountain Wilderness Areas. It also includes several areas proposed for wilderness in ARRWA, including wilderness extensions for Mexican Mountain, San Rafael Reef, Muddy Creek, Devils Canyon Sids Mountain and individual proposed wilderness units for Molen Reef, Eagle Canyon, Cedar Mountain, Rock Canyon, Upper Muddy Creek, San Rafael Knob, Mussentuchit Badlands, Jones Bench, and Limestone Cliffs.

12. I use and enjoy the public lands and natural resources within the San Rafael Swell TMA for many health, recreational, spiritual, educational, aesthetic, and other purposes and have done so for decades. This is one of my favorite places to visit in Utah amongst the millions of acres of stunning BLM-managed land in the state. The San Rafael Swell's remarkable and sublime natural beauty never disappoints. I enjoy the incredible scenic and open views, the rugged sandstone landscape, its remote and largely untrammeled nature, the rare entrenched desert rivers of the Muddy Creek and San Rafael River, the serene quiet, prehistoric resources, and the native vegetation. I have visited the San Rafael Swell, including the lands at issue in the travel plan, many times since the 1980s and most recently in February 2025. I have hiked, boated, walked, backpacked, canyoneered, explored and camped throughout vast sections of the Swell and am familiar with the routes subject to the San Rafael Swell TMP. I have hiked and explored on or in close proximity to many of the routes at issue in the TMP including around and onto Calf Mesa (SS3067, SS3071, SS3073, SS3075, SS3076, SS3077, SS3080, and SS3083), in the Prickly Pear Flat area (SS2174, SS2176, and SS2177), into Sulphur Canyon (SS4154, SS4155, SS4156, SS2157, SS4158, SS4159, SS4160, and SS4161), in and around Eardley Canyon (SS2491, SS2492, SS2494, SS2496, SS2497, SS2500, SS2501, SS2504, SS2505, SS2507, SS2512, and SS2518), along the rims and buttes by and north of Family Butte (SS4067,

SS4068, SS40470, SS4072, SS4073, SS4074, SS4077, SS4099, SS4100, SS4102, SS4103, SS4104, SS4105, SS4106, SS4109, SS4111, SS4114, SS4115, SS4116, SS4117, and SS4123), and throughout the Red Ledges and Molen Reef landscape (SS3420, SS3421, SS4322, SS3425, SS3426, SS3427, SS3428, SS3429, SS3432, SS3433, SS3346, SS3349, SS3350, SS3352, SS3353, SS3354, SS3355, SS3356, SS3357, SS3366, and SS3368) plus countless other canyons, reefs, ridges and locations. I intend to return to the San Rafael Swell as often as possible but certainly within the next year.

13. With regard to approximately 665 miles of routes identified within the TMA, the BLM's decision in the San Rafael Swell TMP not to designate these routes for public motorized vehicle use minimizes the threat of OHV-related damage to the stunning natural and cultural resources found within this landscape. This decision benefits my interests in seeing these lands protected and preserved in their natural state. It will also allow me to enjoy these spectacular places without the incessant noise from OHVs and the sight of OHV-caused damage. Specifically, the TMP ensures that reclaimed routes and routes with cryptobiotic soils and/or mature black brush will not be impacted by motorized use. This will allow the decades of reclamation to continue, further enhancing the visual and natural resources of the area, and will prevent routes that no longer exist on the ground from being re-established and introducing new damage to soils, vegetation, and fragile riparian areas. In addition, BLM's decision to not designate the 665 miles of routes will minimize the off-trail impacts associated with OHV non-compliance such as looting of prehistoric and historic sites.

14. That said, the San Rafael Swell TMP also authorized motorized use on 1,496 miles of routes to motorized vehicle use. That is more open mileage than what was previously

designated in the San Rafael Swell TMA by the 2008 Price and Richfield RMPs. Thus, the threat of OHV damage in areas open to motorized vehicle use remains and harms SUWA's and my interests, particularly where open routes cross through or nearby riparian areas and wilderness-quality lands.

15. I, and SUWA, have worked for years to protect public lands, including within the San Rafael Swell TMA, from adverse OHV impacts. In addition to work related to the resource management and travel management planning processes culminating in the San Rafael Swell TMP, since around 2000, SUWA and myself have collaborated with BLM and coordinated volunteer and staff programs to restore OHV-damaged areas within the San Rafael Swell TMA.

16. An order by the court to reverse, vacate, set aside, or enjoin the San Rafael Swell TMP will harm SUWA's and my interests in protecting and preserving the public lands within the Swell because the threat of additional adverse OHV impacts on the subject routes would be created or revived. I am concerned about the proliferation and extensive use of OHVs in the San Rafael Swell, particularly in sensitive riparian areas, lands proposed for wilderness designation in ARRWA, near prehistoric and historic resources, and where routes do not exist on the ground or are reclaiming. Allowing OHVs on the routes currently not designated for public motorized use in the San Rafael Swell TMP will further degrade naturalness, harm or destroy cultural resources, create additional dust and pollution, disturb wildlife, lead to route proliferation into sensitive resources, and increase ambient background noise levels. Based on my experience and familiarity with this area, I expect that OHV use will also spread onto reclaimed and non-existent routes, compromising the wilderness characteristics of these areas, and resulting in other regrettable impacts like looting and vandalism. These activities will directly affect and

irreparably harm my interests, including my recreational and aesthetic interests, in these lands. I do not want to see or hear such OHV activity expand, nor do I want OHV use to further expand into the wild areas of the San Rafael Swell.

17. My injuries and harms discussed above will be prevented by a decision by the court affirming BLM's San Rafael Swell TMP.

I DECLARE, under penalty of perjury, that the foregoing is true and correct.

DATED: March 10, 2025

Ray Bloxham