ADAM R.F. GUSTAFSON, Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

PAUL A. TURCKE, Trial Attorney
Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Tel: (202) 532-5994
paul.turcke@usdoj.gov

*Attorneys for Defendants*

---

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH
## CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| BLUERIBBON COALITION, INC., et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT, et al.,<br><br>  Defendants. | Case No. 4:25-cv-00022-DN<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>District Judge David Nuffer |

## INTRODUCTION

This case challenges the U.S. Bureau of Land Management ("BLM") San Rafael Swell Travel Management Plan ("TMP") decision record ("DR"), which designates certain routes for off-highway vehicle ("OHV") use in portions of Emery and Sevier counties in eastern Utah. Plaintiffs BlueRibbon Coalition, Sage Riders Motorcycle Club, and Paul Wells (collectively, "BlueRibbon") are OHV-use advocates who also sued to challenge BLM's Labyrinth/Gemini Bridges TMP ("Labyrinth"), where the court denied their motion for a preliminary injunction.

*See BlueRibbon Coal., Inc. v. U.S. Bureau of Land Mgmt.*, No. 2:23-CV-923-DAK-JCB, 2024 WL 1197862 (D. Utah Mar. 20, 2024). For many of the same reasons articulated by Judge Kimball in denying BlueRibbon's Labyrinth motion for a preliminary injunction, the motion in this case should be denied. In particular, by failing to articulate how the DR causes it irreparable harm, BlueRibbon provides no basis for enjoining BLM's decision.[1]

## BACKGROUND

### I. Legal Background

#### A. Federal Land Policy and Management Act

The Federal Land Policy and Management Act, 43 U.S.C. § 1701 et seq. ("FLPMA"), was enacted in 1976 and establishes a framework for BLM management of federal public lands. Such management occurs at a broad level through "land use plans which provide by tracts or areas for the use of the public lands" that are developed with "public involvement" and consistent with the terms and conditions of FLPMA. 43 U.S.C. § 1712(a). These terms generally include managing "under principles of multiple use and sustained yield[.]" 43 U.S.C. § 1732(a).

#### B. National Environmental Policy Act

BLM must also comply with the National Environmental Policy Act ("NEPA"), which seeks to ensure that federal agencies consider the environmental impacts of proposed major federal actions. 42 U.S.C. § 4332(C); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,

---

[1] The primary project documents are attached hereto as exhibits, including BLM's environmental assessment ("EA") (Ex. 1), finding of no significant impact ("FONSI") (Ex. 2), and the DR (Ex. 3). These, along with other project documents, are available on BLM's ePlanning website at https://eplanning.blm.gov/eplanning-ui/project/1500146/570 (last visited April 3, 2025).

16 (2008).  NEPA imposes purely procedural requirements, and "does not require that certain outcomes be reached as a result of the evaluation."  *Nat. Res. Def. Council, Inc. v. EPA*, 822 F.2d 104, 129 (D.C. Cir. 1987).  "Other statutes may impose substantive environmental obligations on federal agencies, but NEPA merely prohibits uninformed – rather than unwise – agency action."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989) (footnote omitted).

## II.     The San Rafael Swell Travel Management Plan

BlueRibbon challenges the TMP for the San Rafael Swell Travel Management Area ("TMA"), which comprises a total of 1,314,325 acres, 87 percent of which (1,149,016 acres) is BLM-administered land.  *See* EA at 4-5.  "The majority of the TMA is located in Emery County in eastern Utah and straddles Interstate 70; a small portion of the southwestern side of the TMA is in Sevier County."  *Id*. at 4.  The TMA includes various features that "attract high levels of recreation visitation" including "the Wedge Overlook, San Rafael Reef, Mexican Mountain, Temple Mountain, and Buckhorn Draw."  *Id*.

As noted above, BLM implements FLPMA's multiple use mandate by first developing "land use plans" referred to as resource management plans ("RMPs"), 43 U.S.C. § 1732(a), that, among other things, designate areas as open, limited, or closed to OHV use.  *See* 43 C.F.R. § 8342.1; *id*. §§ 8340.0-1, 8340.0-5(e)-(h).[2]  BLM's area designations often impose terms and conditions on OHV travel in "limited" areas, such as by limiting OHV travel to designated routes.  *See* 43 C.F.R. § 8341.1(b).  When BLM makes OHV area or route designations in RMPs

---

[2]     The acronym OHV refers to "any motorized vehicle capable of, or designed for, travel on or immediately over land, water, or other natural terrain."  43 C.F.R. § 8340.0-5(a).  This definition includes general public use of full-size cars and trucks as well as utility terrain vehicles, all-terrain vehicles, motorcycles, and similar motorized means of conveyance, while excluding official, authorized, and emergency use.  *Id*.

and TMPs, respectively, it applies regulatory criteria to address the impacts of its decisions on soil, vegetation, and other resources, including wildlife resources. 43 C.F.R. § 8342.1(a)-(b).

Different portions of the TMA are governed by the 2008 Price Field Office RMP and 2008 Richfield Field Office RMP, respectively. *See* EA at 1. However, BLM's evolving framework for OHV management and various implementation issues following adoption of the 2008 RMPs contributed to development of "a complex management landscape characterized by user conflicts, resource degradation, confusion among users, and public safety concerns." *Id*. And a legal challenge to the 2008 RMPs and associated travel plans, along with similar decisions in four other BLM Utah field offices, led to "a longstanding, complex dispute" ultimately resolved through a settlement agreement approved by this Court. *S. Utah Wilderness All. v. Burke*, 908 F.3d 630, 632-33 (10th Cir. 2018). Under the settlement BLM agreed to issue new TMPs for TMAs in the six field offices, including the San Rafael Swell TMA. *See* Settlement Agreement at 6-7, ECF No. 1-2 (at ECF pages 49-50).

BLM conducted a public planning process for the TMP to consider designations for inventoried routes as OHV-Open (open year-round to all OHV travel), OHV-Limited (allowing public OHV use subject to limits such as vehicle type/width or seasonal use restrictions), or OHV-Closed (route not available for public OHV use). *See* EA at 24, 140-41. The December 2024 Final EA analyzed five alternatives in detail providing for varying amounts of OHV use. *See* EA at 24 (Table 2-1), 24-27. BLM signed the DR on December 31, 2024, selecting

Alternative E and designating 1,355 miles of routes as OHV-Open, 141 miles of routes as OHV-Limited, and 665 miles of routes as OHV-Closed within the TMA.  *See* DR at 2.[3]

Plaintiffs filed this action on March 5, 2025, and the next day filed the instant motion for a preliminary injunction.  *See* Pls.' Mot. for Relief under 5 U.S.C. § 705, or, Alternatively, for a Prelim. Inj., ECF No. 4 ("Mot.").

## LEGAL STANDARDS

### I.  A Preliminary Injunction is an Extraordinary Remedy

To obtain a preliminary injunction a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20; *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021); *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (clarifying that movant must establish that all four factors "weigh in its favor").[4]  "[T]he final two factors 'merge when the Government is the opposing party.'"  *Denver Homeless out Loud v. Denver*, 32 F.4th 1259, 1278 (10th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Because a "preliminary injunction is an extraordinary and drastic remedy," *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (citation omitted), the party seeking such an injunction must make "a clear

---

[3]  "Of the routes designated OHV-Open or OHV-Limited, 1,256 miles were already available for OHV use under previous plans, and 240 miles were previously undesignated/closed.  Of the routes designated OHV-Closed, 507 miles were already considered closed to OHV use under previous plans and 158 miles were previously designated OHV-Open or OHV-Limited."  *Id*.

[4]  A request for "a stay of agency action under section 705 of the APA" is evaluated under the same preliminary injunction standard.  *Colorado*, 989 F.3d at 883; *see also BlueRibbon*, 2024 WL 1197862 at *2.

showing that [it] is entitled to such relief." *Winter,* 555 U.S. at 22; *see also SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (right to preliminary injunctive relief "must be clear and unequivocal"). "When the failure to satisfy one factor is dispositive, a court need not consider the other factors." *Colorado*, 989 F.3d at 890.

  II.  **Administrative Procedure Act Review of Agency Action**

  The Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), waives the sovereign immunity of the United States to allow for judicial review of certain types of agency action. Under the APA, a court may set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review is "deferential," and a plaintiff bears the burden of overcoming the "presumption of validity" afforded to an agency's action. *Defs. of Wildlife v. U.S. Forest Serv.*, 94 F.4th 1210, 1220 (10th Cir. 2024) (quoting *Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010)). "The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994) (footnote omitted).

## ARGUMENT

  BlueRibbon's attempt to obtain preliminary injunctive relief fares no better than its unsuccessful motion in the Labyrinth lawsuit. The motion fails at the threshold because BlueRibbon offers no tenable basis for finding a likelihood of imminent, irreparable injury. As a result, Plaintiffs do not meet their burden in seeking the extraordinary remedy of a preliminary injunction, and the Court should deny the Motion.

I.     **The Lack of Irreparable Injury Precludes Entry of a Preliminary Injunction**

The motion fails at the outset because it offers no basis for finding a likelihood of irreparable injury.  BlueRibbon argues it will suffer irreparable injury because BLM has imminent plans to obliterate closed routes, that its members "will no longer be able to travel [certain] routes as they had planned," and that one member "will be denied access" to the "historic Marsing Ranch."  Mot. at 17.

In recognition of a movant's heavy burden and in the interest of efficiency, the Court's analysis should start and end with irreparable injury, because that element "is the sine qua non for the grant of preliminary relief." *Williams Expl. Co. v. U.S. Dep't of Energy*, 561 F. Supp. 465, 469 (N.D. Okla. 1980); *see also DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018).  "Without irreparable injury, a court must decline to issue preliminary relief on that ground alone." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, 723 F. Supp. 3d 64, 79 (D.D.C. 2024).  Where a movant fails to show a likelihood that it will suffer irreparable injury in the absence of preliminary injunctive relief, "its motion thus fails at the threshold."  *Id*.; *see also Achagzai v. Broad. Bd. of Governors*, No. 14-cv-768, 2016 WL 471274, at *3 (D.D.C. Feb. 8, 2016) ("[W]here a party seeking a preliminary injunction fails to make the required showing of irreparable injury, the matter is settled, and the Court must deny the motion.").

Two of BlueRibbon's arguments concerning irreparable injury were squarely rejected in its prior motion for a preliminary injunction concerning BLM's Labyrinth TMP.  The fears of obliterated routes being lost forever is premised "solely on the existence of a BLM 'toolbox' for implementing route designations."  *BlueRibbon*, 2024 WL 1197862, at *10.  The Labyrinth court properly rejected the argument as "speculative" and "insufficient" because BlueRibbon's unsupported assertion "that BLM will immediately obliterate" all OHV-Closed routes

contradicted the record showing that "implementation is far more nuanced and typically includes signing and user education and other non-disruptive closure methods." *Id*. BlueRibbon simply repeats the same speculative argument here, based on an identical implementation plan for the San Rafael Swell. *See* Mot. at 17 (citing EA at 270-71).[5]  Moreover, the argument independently fails because "route closures are not permanent" and "[a]ny route, reclaimed or not, can be reestablished in the future" through different designations. *BlueRibbon*, 2024 WL 1197862, at *10; *see also* LaFazio Decl. ¶¶ 4, 5.

The Labyrinth court also found an assertion that "not being able to ride OHVs on the closed routes in spring [2025] as [members] had planned" was legally insufficient to establish irreparable injury.  *Id*.  "[R]ecreationists do not have a legally cognizable interest in using a particular route on a particular date" and "hundreds of miles of routes within the TMA" are otherwise available for OHV use.  *Id*.  For the same reason, the Court should reject BlueRibbon's arguments asserting irreparable injury here.

BlueRibbon's final argument similarly fails.  BlueRibbon suggests that designation of certain routes as OHV-Closed to the general public will deprive Mr. Wells of "access to a meaningful piece of his family heritage, the Marsing Ranch."  Mot. at 18.  But this argument fails to provide any legal authority for the proposition that an individual's asserted familial connection to some location on public lands can support a finding of irreparable harm.  Even the

---

[5]   BLM has not "obliterated" any routes, but has only implemented "route closures" on approximately 12 miles of routes by placing signs and "native material such as rock and dead vegetation as closure methods." Decl. of Nicholas LaFazio ¶ 4, Ex. 4 hereto.  "The TMP does not identify any currently known route-specific reclamation needs beyond natural reclamation and vertical mulching" and "BLM will use the minimum necessary reclamation technique to achieve reclamation." EA at 270.  More intensive route-specific reclamation strategies, if any, "will be identified in the future by BLM resource specialists consistent with BLM policies and may require further site-specific NEPA analysis, as appropriate." *Id*.

alleged injury is not irreparable because deprivation of OHV access does not affect family heritage – simply restoring access would fully address the asserted injury.[6]  Moreover, Mr. Wells's declaration does not say that the DR designations prevent him from accessing the Marsing Ranch, but only that BLM's designations affecting "public access" or "all users" in the DR "impact" his ability "to visit this historic site."  Wells Decl. ¶¶ 3,4, ECF No. 1-1.  Rather than articulating imminent, irreparable injury caused by the DR, Mr. Wells primarily expresses disagreement "that the rational[e] that was used by BLM staff to justify closure of these routes [to OHV use] are not based upon evidence."  *Id*. ¶¶ 12-15.[7]

BlueRibbon fails to approach its heavy burden of showing that it is likely to suffer imminent, irreparable injury in the absence of a preliminary injunction.  Based on that failure alone, the Court should deny the Motion.

---

[6]  The imminent harm requirement demands that any preliminary injunction satisfy the purpose of such relief, which "is merely to preserve the relative positions of the parties" until a court can resolve the merits.  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  "If the court ultimately determines that Plaintiffs' claims have merit, Plaintiffs will be able to resume driving the routes at a later date."  *BlueRibbon*, 2024 WL 1197862, at *10.

[7]  Mr. Wells does not state that he is *incapable* of accessing the Marsing Ranch through the alternative routes provided for in the DR, or through some nonmotorized form of access.  It was by such nonmotorized means that he indicates historic access to the Ranch occurred.  *See* Wells Decl. ¶¶ 5, 6.  The DR does not make "any decision affecting non-motorized use."  DR at 4.  And insofar as the location of the Marsing Ranch on a Utah Trust Lands Administration parcel is relevant, the DR does not affect "existing or future authorized users" of such parcels and BLM "will continue to work with current and future authorized users as appropriate to ensure reasonable access."  *Id*. at 3.  BLM is not relegating the State or its permittees to "far-out, indirect" access to State trust lands, *see* Mot. at 18-19, but acknowledging that authorized users can obtain direct, motorized access.  *See State of Utah v. Andrus*, 486 F. Supp. 995, 1009 (D. Utah 1979) (rejecting an asserted "absolute" right of access and concluding that "the United States may regulate the manner of access under statutes such as FLPMA.").

## **CONCLUSION**

For the above reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted this 3rd day of April 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

 */s/ Paul A. Turcke*
PAUL A. TURCKE, Trial Attorney
Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Tel: (202) 532-5994
paul.turcke@usdoj.gov

*Attorneys for Defendants*
